AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

Apr 19, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of

INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT bornstunnatwan_30k, THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC.

)
)
)
)
)
)
)

Case No.    2:24-sw-0403 CSK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a), 846 | Conspiracy to distribute and possess with intent to distribute controlled substances |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 922(a)(1)(A) | Unlawful dealing in firearms without a license |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/

*Applicant's signature*

Thomas Wiebold, Special Agent, DEA

*Printed name and title*

Sworn to before me and signed telephonically.

Date:   April 19, 2024

*Judge's signature*

City and state:   Sacramento, California

Chi Soo Kim, U.S. Magistrate Judge

*Printed name and title*

PHILLIP A. TALBERT
United States Attorney
ALSTYN BENNETT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT bornstunnatwan_30k, THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT |

I, Thomas Wiebold, being first duly sworn, hereby depose and state as follows:

## I.    **INTRODUCTION**

1.      I make this affidavit support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for information associated with the bornstunnatwan_30k account (the "**Target Account**") that is stored at premises controlled by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road, Menlo Park, CA.  The information to be searched is described in the following paragraphs and in Attachment A, hereby incorporated by reference.  This affidavit is made under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

/ / /

1

## II.      AGENT BACKGROUND

2.      I am a Special Agent with the Drug Enforcement Administration, and have been since April 2022.  Currently, I am assigned to the DEA Sacramento District Office.  Before this posting, I graduated from the seventeen-week DEA Basic Agent Training Academy in Quantico, Virginia.  This training included instruction in the investigation of illicit drug trafficking, including, but not limited to, 21 U.S.C. §§ 841 and 846.  Additionally, this training included several hundred hours of comprehensive, formalized instruction in drug identification, detection, and interdiction, financial investigations and money laundering, informant handling, law classes, report writing, seizure and forfeiture of drug related assets, undercover operations, and electronic and physical surveillance procedures.  In furtherance of my training as a Special Agent, I have also received additional, specialized instruction and certifications in informant management, financial investigations, license plate recognition technology, California state wire intercepts, illicit hazardous environment response, high-risk warrant service, drug cartel culture, and narcoterrorism.  As a DEA Special Agent, I have participated in numerous investigations targeting methamphetamine, cocaine, heroin, and illicit pill traffickers operating in the greater Sacramento area.

3.      Before joining the DEA, I served in the United States Army from 2012–2018 as an Infantry Officer assigned to the 75th Ranger Regiment, an Army Special Operations unit.  During this time, I served as a Platoon Leader and in other leadership roles in which I was responsible for various units comprising of between 40 and 300 personnel.  In this capacity, I became a subject matter expert in resource management, multi-purpose canine handling, informant management, and sensitive intelligence collection.  In 2017, I served as the deputy targeting officer in Afghanistan for a Combined Joint Special Operations Task Force.  In that position, I was responsible for synthesizing multi-source intelligence for identifying military targets on a dynamic battlefield.  As a result of my service, I am well-versed in the use of GPS tracking devices, analysis of satellite imagery, and communications interceptions.

4.      During the course of my employment as a DEA Special Agent, I have participated in numerous investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, the seizure of narcotics-related records, and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances.  To successfully conduct these investigations, I have utilized a variety of

investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including undercover agents and confidential sources), pen register and trap and trace devices, GPS and telephone tracking devices, trash covers, mail covers, pole cameras, stationary video recording vehicles, audio recording devices, and video recording devices.

5.      Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by organized criminal enterprises, drug trafficking organizations, and criminal street gangs to smuggle and safeguard controlled substances and weapons, to distribute, manufacture, and transport contraband, and to collect and launder related proceeds.

6.      I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

7.      This affidavit is based upon not only my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation.  Where I describe statements made by other people (including other agents and law enforcement officers), the statements are described in sum, substance, and relevant part.  Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

8.      The facts and information set forth herein are based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me and other law enforcement personnel, my review of investigative reports, and discussions with other federal, state, and local law enforcement officials.  This affidavit is intended to show only that there is sufficient probable cause for the requested complaints and warrants and does not set forth all of my knowledge about this matter.

9.      Based on the facts set forth in this affidavit, there is probable cause to believe that the black iPhone to be searched contains evidence of violations of 21 U.S.C. §§ 841 and 846 (conspiracy to distribute and possess with intent to distribute controlled substances); 18 U.S.C. § 922(a)(1)(A) (unlawful dealing in firearms without a license); and 18 U.S.C. § 922(g)(1) (felon in possession of a

firearm) committed by Antoine DAVIS and/or other co-conspirators.

### III.    JURISDICTION

10.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

### IV.    PROBABLE CAUSE

**A.    DAVIS Uses Cell Phone[1] Communication to Coordinate Drug Deals**

11.    In November 2022, CS-1,[2] under the direction of agents, utilized a law enforcement monitored Instagram profile to contact the user of Instagram account "bornstunnatwan_30k" regarding drug sales.  This account has posted numerous pictures and "stories" showing Antoine DAVIS's face,[3] as well as captions which refer to DAVIS in the first person, leading law enforcement to believe that the primary user of the account is DAVIS.  The user of bornstunnatwan_30k provided CS-1 with the cell

---

[1] Throughout this investigation, DAVIS used two phone numbers to communicate.  The first was 916-738-2990, which DAVIS used to coordinate the controlled purchases that occurred in January 2023 and February 2023.  Ad administrative subpoena served to T-Mobile in January 2023 provided that this phone number was subscribed to the name Antoine DAVIS with a service and billing address of 3818 25th Avenue, Sacramento, CA.  During the January 2023 transaction, DAVIS referenced phone conversations between 916-738-2990 and CS-1, further identifying him as the user of the phone number.  Later in the investigation, DAVIS began to use the phone number 279-231-5172.  Beginning with the March 2023 controlled purchase, DAVIS contacted CS-2 via Instagram and told CS-2 that his phone number was 279-231-5172.  Administrative subpoenas served to T-Mobile periodically since March 2023 have revealed that this phone number is subscribed to Kayla Murchison, DAVIS's girlfriend during the investigation, at 5125 La Pamela Way, Sacramento, CA,.  Based on my training and experience, I know that drug dealers change their cell phone numbers periodically, and also use phone numbers that are not subscribed to their name and address, in order to avoid detection by law enforcement.  Because DAVIS communicated with CS-2 to coordinate a controlled purchase of drugs, and later showed up to that controlled purchase, I believe that DAVIS was the primary user of this cell phone number until his arrest in March 2024.

[2] CS-1 is a current DEA CS, and has assisted DEA and other federal law enforcement with investigations for approximately 4 years.  CS-1 is assisting DEA in exchange for financial compensation.  CS-1 is currently on California Department of Corrections and Rehabilitation Parole for attempted robbery.  CS-1 has provided accurate and reliable information for the duration of the time that CS-1 has been assisting law enforcement, which has led to multiple arrests and search warrants.  CS-1 has never been found to provide false information.  CS-1 has a prior state felony drug conviction and robbery conviction, and a conviction for misdemeanor assault.  Therefore, DEA considers CS-1 to be reliable in this case.

[3] I positively identified DAVIS by comparing these images to a CA Department of Motor Vehicles (DMV) photograph as well as Sacramento County Jail booking photos.

phone number 916-738-2990.  CS-1 later contacted this number at the direction of agents.  Along with

DAVIS's photographs with references to himself in the first person, and 916-738-2990 subscribed, at the

time, in DAVIS's name, agents believe that DAVIS is the user of both the bornstunnatwan_30k

Instagram account and, at the time, the cell phone with call number 916-738-2990.

12.    Throughout this investigation, law enforcement has utilized confidential sources to

purchase drugs from DAVIS on multiple occasions:

a)    In January 2023, CS-1 purchased over 40 grams of pills which were confirmed by

the DEA lab to contain fentanyl.

b)    In February 2023, CS-1 purchased two commercial firearms and over 40 grams of

pills which were confirmed by the DEA lab to contain fentanyl.

c)    In March 2023, CS-2[4] purchased over 40 grams of pills which were confirmed by

the DEA lab to contain fentanyl.

d)    In April 2023, CS-2 purchased over 40 grams of pills which were later confirmed

by the DEA lab to contain fentanyl.

e)    In June 2023, CS-2 purchased over 400 grams of pills which were later confirmed

by the DEA lab to contain fentanyl.

f)    In September 2023, CS-3[5] purchased over 40 grams of pills which were later

confirmed by the DEA lab to contain fentanyl.

13.    In each of the above instances, DAVIS used his cell phone, and apps on his cell phone

such as iMessage, FaceTime, and Instagram Messenger via the "bornstunnatwan_30k" account, to set

---

[4] CS-2 is a current DEA CS, and has assisted DEA and other federal law enforcement with investigations for approximately 1 year.  CS-2 is assisting DEA in exchange for financial compensation. CS-2 has provided accurate and reliable information for the duration of the time that CS-2 has been assisting law enforcement, which has led to multiple arrests and search warrants.  CS-2 has never been found to provide false information.  CS-2 does not have any prior felony convictions or pending criminal cases.  Therefore, DEA considers CS-2 to be reliable in this case.

[5] CS-3 is a current Bureau of Alcohol, Tobacco, and Firearms (ATF) CS and has been assisting ATF since 2005.  CS-3 has prior felony convictions for robbery, attempted robbery, possession with intent to distribute marijuana and carrying a firearm in furtherance of a drug trafficking offense.  CS-3 does not have any known pending criminal cases.  CS-3 is currently assisting ATF in exchange for financial compensation.  CS-3 has provided accurate and reliable information for the duration of the time that CS-3 has been assisting law enforcement, which has led to multiple arrests and search warrants.  CS-3 has never been found to provide false information.  Therefore, agents consider CS-3 to be reliable in this case.

1  up, discuss and coordinate drug deals with the Confidential Sources leading up to the controlled

2  purchases.

3      **B.**    **DAVIS, Using Instagram Account bornstunnatwan_30k, Advertises Drugs for Sale**

4      14.    Throughout this investigation, and from my personal observations between March 2023

5  and March 2024, DAVIS has used his Instagram profile, bornstunnatwan_30k (the **Target Account**), to

6  post photos and videos to his public-facing "Story" advertising his access to drugs and firearms, and to

7  entice potential customers.  Examples of DAVIS's posts are below:

  

21      15.    The first image, from a post on February 22, 2024, depicts blue circles with the letter

22  "M" in them.  Based on my training and experience, I know that this image is indicative of fentanyl-

23  laced pills made to look like "M-30" Oxycodone tablets.  The image also depicts boat emojis.  As

24  mentioned previously, I know that a "boat" is common slang that indicates a quantity of 1,000 pills.

25  Finally, the image depicts an arrow pointing to a phone.  Based on my training and experience, I believe

26  that this depiction is indicative of DAVIS advertising fentanyl-laced pills made to look like "M-30"

27  Oxycodone tablets for sale and requesting that a prospective customer contact him to purchase boats of

28  pills.

16.     The second image, from a post on October 7, 2023, and reposted again on November 10, 2023 and March 5, 2024, depicts a snowy scene with a cartoon individual shoveling snow on the ground. Based on my training and experience, I know that snowflakes, and other visual representations of snow, are indicative of cocaine.  Similar to the first image, the text "Get up wit me while I'm outside," is an advertisement for cocaine for sale and an instruction for prospective customers to contact DAVIS to purchase cocaine.

17.     The third image depicts the phrase "Clean blues online Around."  Based on my training and experience, I know that a reference to "blues" is a reference to fentanyl-laced pills made to look like M-30 Oxycodone tablets.  Based on this message, I believe that DAVIS was advertising "blues" to sell to prospective customers.

18.     I have also observed DAVIS post images of firearms to his Story, such as the below:



19.     In this image, observed on February 15, 2024, DAVIS has a Glock-style handgun in his lap which is loaded with a high-capacity magazine and is equipped with a machine gun conversion kit, all of which are prohibited for DAVIS to possess based on his prior felony convictions.  While this image does not overtly indicate that DAVIS is attempting to sell the firearm, I believe it is still

indicative of DAVIS's proclivity to conduct criminal acts (such as being a felon in possession of a firearm). Based on my training and experience, I believe that these Instagram Stories show that DAVIS still actively distributes, or attempts to distribute, large quantities of drugs, and is also a felon who continues to possess a firearm despite his prohibited status.

### C.    Federal Search Warrant at 6001 Riverside Boulevard #306, Sacramento, CA

20.    Based upon the facts developed through the investigation of DAVIS's drug trafficking and firearms related offenses, on March 18, 2024, I secured a federal search warrant for 6001 Riverside Boulevard #306, Sacramento, CA, which DEA and other law enforcement partners served on March 19, 2024. Upon executing the search warrant, agents found DAVIS inside the residence. Also discovered inside the residence were approximately 56 gross grams of blue pills stamped with "M-30" markings. Based on my training and experience, I believe that these blue pills were fentanyl-laced pills made to look like M-30 Oxycodone tablets. Agents also seized two semiautomatic handguns--a privately manufactured firearm and a Glock 29—from the residence. Notably, the pills, one of the firearms, and a scale were located inside a backpack in the living room of the apartment, along with a tax document in DAVIS's name. Based on my training and experience, I know that drugs found in close proximity to a firearm and a digital scale is indicative of drug trafficking. DAVIS was thereafter arrested and the pills and firearms were seized from the apartment as evidence.

21.    On April 4, 2024, DAVIS was indicted by a federal grand jury on ten counts, including violations of 21 U.S.C. §§ 841(a) and 846 (conspiracy to distribute, possession with intent to distribute, and distribution of a mixture or substance containing a detectable amount of fentanyl) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

### V.    BACKGROUND CONCERNING INSTAGRAM[6]

22.    Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile

---

[6]    The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com

application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

23.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

24.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

25.     Each Instagram account is identified by a unique username chosen by the user.  Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

26.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter/X account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

27.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and

"restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

28.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users.  Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

29.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

30.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.  Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

31.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

32.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

33.    Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

34.    Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

35.    Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

36.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

37.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

38.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data

11

can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

39.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

41.     Throughout the investigation, DAVIS has used various forms of messaging and Instagram communication platforms, such as Direct Messages, to discuss criminal activity, including messaging about prices and quantities of firearms and discussing the sale of controlled substances. DAVIS has also sent pictures of firearms that he plans to distribute.  I believe various associates of DAVIS have Instagram accounts and DAVIS has used the **Target Account** to communicate with his co-conspirators in a similar fashion that DAVIS communicated with the Confidential Sources in this case.

42.     In my training and experience, evidence of who was using an Instagram account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

43.     A review of the data maintained by these features, as detailed earlier in this affidavit, may provide law enforcement with additional evidence, leads or context surrounding DAVIS.  For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

/ / /

44.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Instagram can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

45.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

46.     Other information connected to an Instagram account may lead to the discovery of additional evidence.   In addition, direct messages can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.  Additionally, a review of Instagram direct messages may reveal additional information regarding the acquisition and disposition of narcotics and firearms.

47.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Meta's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## VI.     <u>CONCLUSION</u>

48.     Based   on the foregoing, there is probable cause that there is evidence on the **Target Account**, used by DAVIS throughout the investigation, of violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to distribute and possession with intent to distribute controlled substances), 18 U.S.C. §

922(a)(1)(A) (unlawful dealing in firearms without a license), and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), and I request that the Court issue a search warrant for the **Target Account** under Rule 41 of the Federal Rules of Criminal Procedure.

49.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/
_____
Thomas Wiebold
Special Agent
Drug Enforcement Administration

Subscribed and sworn to me
telephonically on:

April __19__, 2024

_____
The Honorable Chi Soo Kim
UNITED STATES MAGISTRATE JUDGE

*/s/ Alstyn Bennett*
_____
Approved as to form by AUSA Alstyn Bennett

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Instagram Account

bornstunnatwan_30k that is stored at premises owned, maintained, controlled, or operated by

Meta Platforms Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for some of the accounts or identifiers listed in Attachment A.

A.      All business records and subscriber information **from January 13, 2022 to the present**, in any form kept, pertaining to the account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, **from January 13, 2022 to the present;**

7.      Privacy and account settings, including change history; and

8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from January 13, 2022 to the present**;

C.    All content, records, and other information relating to communications sent from or received by the account **from January 13, 2022 to the present**, including but not limited to:

    1.    The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.    All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the account and other Instagram users **from January 13, 2022 to the present**, including but not limited to:

    1.    Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

    2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

    3.    All contacts and related sync information; and

    4.    All associated logs and metadata;

E.    All records of searches performed by the account **from January 13, 2022 to the present**; and

F.    All location information, including location history, login activity, information geotags, and related metadata **from January 13, 2022 to the present**.

Meta is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841(a) and 846 (conspiracy to distribute and possession with intent to distribute a substance or mixture containing a detectable amount of fentanyl) and/or 18 U.S.C. §§ 371, 922(a)(1)(A) (conspiracy and unlawful dealing in firearms without a license) those violations involving Antoine DAVIS and occurring on or after **January 13, 2022**, including, for the account  listed on Attachment A information pertaining to the following matters:

A.  All items constituting evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a), 846, 8 U.S.C. §§ 371, and 922(a)(1)(A) including but not limited to:

1. Lists of customers and related identifying information;

2. Types, amounts, and prices of drugs and/or firearms as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of drugs and/or firearms (including names, addresses, phone numbers, or any other identifying information);

4. All bank records, checks, credit card bills, account information, and other financial records, including Apple Cash and Apple Pay;

5. Records relating to the acquisition and distribution of firearms, firearms parts, tools and/or equipment associated with firearms, and narcotics, including books, receipts, invoices, notes, bills of sale, ledgers, and pay/owe sheets;

6. Documentation evidencing the attendance at gun shows, including but not limited to ticket stubs, payments to gun shows, promotional materials and written and/or electronic

correspondence with gun shows;

7. Any records of incoming, outgoing calls, and missed call history, which would include the number associated with the phone, numbers dialed, calls received, time of calls, and duration of calls;

9. Any incoming and outgoing recorded messages and stored voicemail messages;

10. Any records of "contacts" stored in the telephone, such as stored names, telephone numbers, e-mail addresses, and other identifying contact information;

11. Any incoming, outgoing, or draft text messages;

12. Any photographs, video recordings, and audio clips;

13. Stored reminders, memos, notes, documents, and lists;

14. Any records of appointments and/or reminders annotated on a calendar;

15. Evidence and records relating to the use of any mailing or mail shipping service, including records of receipts, correspondence, tracking numbers, subscriptions, and payment information;

16. Documentation or evidence related to the storage of firearms and/or ammunition, including rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them;

17. Photographs, video recordings, audio clips, documents and records related to names and personal identifying information used by DAVIS;

18. Passwords used to access the electronic data described above.

B. Records and information related to the acquisition, disposition, shipment or re-sale of firearms, ammunition, narcotics and any other contraband, including the proceeds and records relating thereto;

C. Evidence indicating how and when the email account was accessed or used, to

determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

D.  Evidence indicating the email account owner's state of mind as it relates to the crime(s) under investigation;

E.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

F.  The identity of the person(s) who communicated with the user ID about matters relating to the unlawful possession, use, acquisition and disposition of firearms and narcotics, including records that help reveal their whereabouts.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Meta Platforms Inc. ("Meta"), and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.    such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                          Signature

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| INFORMATION ASSOCIATED WITH | ) |
| INSTAGRAM ACCOUNT bornstunnatwan_30k | ) |
| THAT IS STORED AT PREMISES CONTROLLED | ) |
| BY META PLATFORMS, INC. | ) |

Case No.     2:24-sw-0403 CSK

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____

*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ May 3, 2024 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   April 19, 2024 at 3:48 p.m.       _____

*Judge's signature*

City and state:   Sacramento, California       Chi Soo Kim, U.S. Magistrate Judge

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
Signature of Judge                                                             Date

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the Instagram Account bornstunnatwan_30k that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for some of the accounts or identifiers listed in Attachment A.

A.      All business records and subscriber information **from January 13, 2022 to the present**, in any form kept, pertaining to the account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, **from January 13, 2022 to the present;**

7.      Privacy and account settings, including change history; and

8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.  All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from January 13, 2022 to the present**;

C.  All content, records, and other information relating to communications sent from or received by the account **from January 13, 2022 to the present**, including but not limited to:

   1.  The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

   2.  All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

   3.  All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

   4.  All associated logs and metadata;

D.  All content, records, and other information relating to all other interactions between the account and other Instagram users **from January 13, 2022 to the present**, including but not limited to:

   1.  Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

   2.  All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

   3.  All contacts and related sync information; and

   4.  All associated logs and metadata;

E.  All records of searches performed by the account **from January 13, 2022 to the present**; and

F.  All location information, including location history, login activity, information geotags, and related metadata **from January 13, 2022 to the present**.

Meta is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841(a) and 846 (conspiracy to distribute and possession with intent to distribute a substance or mixture containing a detectable amount of fentanyl) and/or 18 U.S.C. §§ 371, 922(a)(1)(A) (conspiracy and unlawful dealing in firearms without a license) those violations involving Antoine DAVIS and occurring on or after **January 13, 2022**, including, for the account  listed on Attachment A information pertaining to the following matters:

A.  All items constituting evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a), 846, 8 U.S.C. §§ 371, and 922(a)(1)(A) including but not limited to:

    1.  Lists of customers and related identifying information;

    2.  Types, amounts, and prices of drugs and/or firearms as well as dates, places, and amounts of specific transactions;

    3.  Any information related to sources of drugs and/or firearms (including names, addresses, phone numbers, or any other identifying information);

    4.  All bank records, checks, credit card bills, account information, and other financial records, including Apple Cash and Apple Pay;

    5.  Records relating to the acquisition and distribution of firearms, firearms parts, tools and/or equipment associated with firearms, and narcotics, including books, receipts, invoices, notes, bills of sale, ledgers, and pay/owe sheets;

    6.  Documentation evidencing the attendance at gun shows, including but not limited to ticket stubs, payments to gun shows, promotional materials and written and/or electronic

correspondence with gun shows;

7.     Any records of incoming, outgoing calls, and missed call history, which would include the number associated with the phone, numbers dialed, calls received, time of calls, and duration of calls;

9.     Any incoming and outgoing recorded messages and stored voicemail messages;

10.    Any records of "contacts" stored in the telephone, such as stored names, telephone numbers, e-mail addresses, and other identifying contact information;

11.    Any incoming, outgoing, or draft text messages;

12.    Any photographs, video recordings, and audio clips;

13.    Stored reminders, memos, notes, documents, and lists;

14.    Any records of appointments and/or reminders annotated on a calendar;

15.    Evidence and records relating to the use of any mailing or mail shipping service, including records of receipts, correspondence, tracking numbers, subscriptions, and payment information;

16.    Documentation or evidence related to the storage of firearms and/or ammunition, including rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them;

17.    Photographs, video recordings, audio clips, documents and records related to names and personal identifying information used by DAVIS;

18.    Passwords used to access the electronic data described above.

B.  Records and information related to the acquisition, disposition, shipment or re-sale of firearms, ammunition, narcotics and any other contraband, including the proceeds and records relating thereto;

C.  Evidence indicating how and when the email account was accessed or used, to

determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

D.  Evidence indicating the email account owner's state of mind as it relates to the crime(s) under investigation;

E.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

F.  The identity of the person(s) who communicated with the user ID about matters relating to the unlawful possession, use, acquisition and disposition of firearms and narcotics, including records that help reveal their whereabouts.